## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIE A. SU, Acting Secretary of Labor, United
States Department of Labor,

      Petitioner,

      v.

MICHAEL TRINKLEY, TIMOTHY BARKLEY,
AND ETHAN SIMMONS ,

      Respondents.

Case No. :  2:24-mc-195

## MEMORANDUM IN SUPPORT OF
## PETITION TO ENFORCE ADMINISTRATIVE SUBPOENAS

Julie A. Su, the Acting Secretary of Labor for the United States Department of Labor (the

"Secretary"), submits the following Memorandum in Support of her Petition to Enforce

Administrative Subpoenas.

### I.    NATURE OF THE MATTER

The Secretary's Petition is brought to compel three non-management employees of

Vorteq Coil Finishers, LLC ("Vorteq") to comply with administrative subpoenas *ad*

*testificandum* and to disqualify the attorney currently representing them because of his clear and

demonstrated conflict of interest.  The subpoenas, attached as Exhibit A, were issued by the

Occupational Safety and Health Administration ("OSHA") as part of OSHA's investigation of

Vorteq stemming from a fatality at Vorteq's plant.  Attorney Michael Pawk claims to represent

the three non-management employee Respondents who have been subpoenaed to provide

testimony under oath.  However, Mr. Pawk was selected by, and is being paid by, Vorteq, and

1

OSHA has gathered evidence indisputably establishing that Mr. Pawk is acting in the best interests of Vorteq and not in the best interests of the employees whom he purports to represent. Mr. Pawk has necessitated the filing of this subpoena enforcement action because he will not allow the employees to provide testimony under oath if the testimony is recorded and transcribed by a court reporter. This frivolous obstruction is a tactic intended to benefit Vorteq by running out the clock on OSHA's narrow six-month window to issue a citation pursuant to the applicable statute of limitations.

Moreover, Mr. Pawk has misled the employees and interfered with OSHA's investigation by advising the employees that it is in their interest to withhold information from OSHA that would be damaging to Vorteq. Information about Mr. Pawk's conduct comes directly from a fourth individual who was initially represented by Mr. Pawk while he was employed by Vorteq. This individual has terminated Mr. Pawk's representation, has ended his employment with Vorteq, and has waived his attorney-client privilege because of Mr. Pawk's conflict of interest and Mr. Pawk's insistence that this individual withhold information from OSHA that is harmful to Vorteq, which he refuses to do. The Court must enforce the subpoenas and disqualify Mr. Pawk from representing the three Respondents to ensure that his involvement in this matter does not continue to interfere with OSHA's ability to conduct its investigation and gather relevant evidence.

## II. JURISDICTION AND VENUE

Subject matter jurisdiction and venue are appropriate in this Court. Section 8(b) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq. (the "OSH Act"), empowers any district court of the United States within the jurisdiction in which a witness is found, resides, or transacts business, in case of a witness's refusal to obey an administrative

subpoena, to issue an order requiring such person "to appear and produce evidence." 29 U.S.C. § 657(b). The evidence sought here pertains to OSHA's investigation of an incident at Vorteq's plant located at 125 McFann Road, Valencia, Pennsylvania, 16059, which is within the jurisdiction of the Western District of Pennsylvania. Upon information and belief, the three Respondents work at this plant, can be found at this plant, and reside within the Western District of Pennsylvania.[1] Thus, Respondents can be found in, transact business within, and reside within the Western District of Pennsylvania.

### III.   STATEMENT OF FACTS

#### A.   OSHA's role is to protect workers from unsafe workplace conditions.

OSHA's mission is to ensure safe and healthful working conditions for working people by setting and enforcing standards and by providing training, outreach, education, and assistance. *See* OSHA's Mission Statement, *available at* https://www.osha.gov/aboutosha. Section 5(a)(2) of the OSH Act requires employers to "comply with occupational safety and health standards promulgated under this chapter." 29 U.S.C. § 654(a)(2). Under Section 9 of the OSH Act, OSHA can issue citations and penalties to an employer who has violated a requirement of Section 5 of the statute or any standard promulgated under Section 5 of the OSHA Act. 29 U.S.C. § 658(a). The statute of limitations in the OSH Act requires OSHA to issue citations within six months of the occurrence of a violation. *Id.*

The OSH Act also contains provisions to ensure that OSHA is able to interview employees without interference from employers, and to ensure that employees are not retaliated

---

[1] Based upon information provided by counsel, Michael Trinkley lives in Butler, Pennsylvania; Timothy Barkley lives in Butler, Pennsylvania; and Ethan Simmons lives in Butler, Pennsylvania.

against for providing information to OSHA or otherwise assisting OSHA during inspections. Section 8(b) of the OSHA Act authorizes OSHA, as part of its investigation, to "question privately any such employer, owner, operator, agent or employee." 29 U.S.C. § 657(a)(2). As the legislative history points out, the purpose of this provision is to ensure that employees "will not be hesitant to point out hazardous conditions which they might otherwise be reluctant to discuss." S.Rep. No. 91–1282 (1970), reprinted in 1970 U.S.C.C.A.N. 5177, 5187-88. In furtherance of this objective, the OSH Act also specifically prohibits employers from retaliating against any employee who "has filed any complaint . . . under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act." 29 U.S.C. § 660(c)(1).

## B.     OSHA's Investigation and the Subpoenas *Ad Testificandum*

OSHA is currently conducting an inspection of Vorteq that was prompted by a horrific workplace fatality at Vorteq's plant in Valencia, Pennsylvania. The fatality involved an employee who was attempting to clean a large chrome roller with coil metal running under and around the chrome roller using his hand and a rag while the machine was running on September 5, 2023. The coil metal and the rotating chrome roller created a "nip point." The employee was pulled in between the roller and the sheet of coil up to his shoulder. His arm was badly broken, and his chest structure was also badly broken, and he died as a result of his injuries. *See* Declaration of Compliance Safety and Health Officer Vance Delsignore ("CSHO Decl."), attached as Exhibit B, at par. 7.

Information obtained from numerous sources, including an inspection of the worksite and confidential interviews of government informants conducted by OSHA Compliance Safety and

Health Officer ("CSHO") Vance Delsignore, indicates: that the machine may not have been compliant with applicable safety regulations; that Vorteq's management employees at the plant may have been aware of the hazardous conditions; and that Vorteq has had similar serious injuries at this plant as well as other plants around the country with the same or similar hazards. *See* CSHO Decl. at par. 9.

In furtherance of the investigation, OSHA seeks the testimony of the three employee Respondents. *See* CSHO Decl. at par. 12. CSHO Delsignore has obtained the following information regarding the these non-management Respondents: Michael Trinkley and Timothy Barkley work at the Vorteq plant and are believed to work in the maintenance department; Ethan Simmons works at the Vorteq plant and is believed to be a machine operator; all three of these employees have, at various points in time, experienced injuries or near-misses on the same coater machine while attempting to clean the machine; and Vorteq's management was aware of all three incidents. Additionally, Mr. Simmons is the individual who first discovered the deceased employee shortly after the fatal accident. *See* CSHO Decl. at par. 10. Attorney Michael Pawk with the law firm of Lutz Pawk & Black has informed the Secretary that he represents each of these three non-management employee Respondents.

After OSHA determined that it needed to interview Respondents, and because Respondents were purportedly represented by counsel, the Secretary determined that it would be appropriate to subpoena the witnesses to provide testimony under oath, as the Secretary is authorized by statute to do. Accordingly, OSHA prepared subpoenas *ad testificandum* for Respondents. The subpoenas note: "This testimony will be taken before a notary public or some other officer authorized to administer oaths under the law. The testimony will be recorded by stenographic means and a transcript will be generated." *See* Exhibit A. When a witness is

5

represented by counsel, and OSHA issues a subpoena *ad testificandum* to take the witness's sworn testimony, OSHA typically hires a court reporter to administer the oath and transcribe the sworn testimony including, in most instances, the court reporter making an audio recording of the testimony for purposes of ensuring the accuracy of the transcription.

On January 26, 2024, the Secretary sent the three subpoenas *ad testificandum* to attorney Michael Pawk by electronic mail for the non-management employee Respondents, and Mr. Pawk confirmed in a response e-mail that he was accepting service on behalf of Respondents.  Mr. Pawk also confirmed his position that he is unwilling to allow Respondents to provide sworn testimony so long as OSHA intends to have a court reporter present who will record and transcribe the testimony.

## IV.  **ARGUMENT**

### A.  **There is no dispute that OSHA's administrative subpoenas *ad testificandum* satisfy the *Morton Salt* Standard.**

The Secretary has the authority to conduct investigations of establishments where work is performed to determine whether an employer has violated OSHA standards.  *See* 29 U.S.C. § 657(a).  In conducting these investigations, the Secretary is empowered to issue administrative subpoenas "requir[ing] the attendance and testimony of witnesses and the production of evidence under oath."  29 U.S.C. § 657(b).  Courts recognize that the Secretary has "broad discretion to require the disclosure of information concerning matters within [the Secretary's] jurisdiction." *Phillips Petroleum Co. v. Lujan*, 951 F.2d 257, 260 (10th Cir. 1991) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950); *Endicott Johnson v. Perkins*, 317 U.S. 501, 509 (1943)); *see also Donovan v. Union Packing Co. of Omaha*, 714 F.2d 838 (8th Cir. 1983) (discussing the Secretary's subpoena power).

The OSH Act authorizes federal courts to enter an order requiring a person who has failed to respond to the Secretary's subpoenas to produce evidence relating to the matter under investigation or in question.  29 U.S.C. § 657(b); *Martin v. Gard*, 811 F. Supp. 616, 620 (D. Kan. 1993) ("Administrative agencies, like the Department of Labor, are without the authority . . . to enforce their own subpoenas, [so] they must apply to the district courts for the enforcement."). "[J]udicial review of administrative subpoenas is 'strictly limited.'"  *University of Medicine and Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 871-72 (D.C. Cir. 1977) (*en banc*)).  As long as the subpoena is "within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant," the court must order that the subpoena be enforced.  *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *see also Dole v. Trinity Indus., Inc.*, 904 F.2d 867, 871 (3d Cir. 1990) (applying *Morton Salt* standard in OSHA subpoena enforcement context).  Moreover, "because of the important governmental interest in the expeditious investigation of possible unlawful activity," *FTC v. Texaco, Inc.*, 555 F.2d at 872, subpoena enforcement proceedings "'are designed to be summary in nature,'" *United States v. American Target Advertising, Inc.*, 257 F.3d 348, 353 (4th Cir. 2001) (quoting *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 5 (1st Cir. 1996)); *see also ICC v. Gould*, 629 F.2d 847, 851-52 (3d Cir. 1980).

When the *Morton Salt* standard is satisfied, the burden shifts to the respondent to establish that enforcement of the subpoena would be improper or an abuse of process.  *See Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 79 (3d Cir. 2007); *Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 125 (3d Cir. 1981).  An abuse of process occurs when the administrative agency is acting for an improper purpose, such as to harass or pressure settlement in a collateral matter, or any other purpose that lacks good faith.  *U.S. v. Powell*, 379 U.S. 48, 58

(1964).

In this case, Mr. Pawk has not identified any concerns or objections with regard to OSHA's authority to issue subpoenas and require sworn testimony of witnesses, and Mr. Pawk has accepted service on behalf of Respondents.  Further, Mr. Pawk does not contend that there are any issues with regard to the subpoenas being too indefinite or the information sought not being reasonably relevant.

However, Mr. Pawk asserts that he will not allow Respondents to provide sworn testimony if the testimony is transcribed by a court reporter, including the court reporter making an audio recording of the testimony for transcription purposes.  Thus, Mr. Pawk's position concerns *only the manner in which the sworn testimony is taken by OSHA*.

**B.    The Court has authority to require Respondents to provide sworn testimony in the presence of a court reporter who will transcribe the testimony.**

As noted, the Secretary is empowered to issue administrative subpoenas "requir[ing] the attendance and testimony of witnesses and the production of evidence under oath."  29 U.S.C. § 657(b).  The Administrative Procedure Act, 5 U.S.C. §§ 551-559 ("APA"), contains provisions which clearly contemplate that sworn testimony will be transcribed.  The APA provides that when a person is compelled to produce evidence to a federal agency, that person "is entitled to retain or, on payment of lawfully prescribed costs, procure a copy *or transcript thereof*, except that in a nonpublic investigatory proceeding the witness may for good cause be limited to inspection of *the official transcript of his testimony*."  5 U.S.C. § 555(c) (emphasis added).  By addressing the circumstances under which a person has the right to review or obtain a transcript of his or her testimony, the APA presupposes that the testimony will be transcribed and reduced to a transcript.

8

As a matter of standard protocol, and consistent with countless other federal government agencies with similar subpoena authority, OSHA typically hires court reporters to transcribe sworn testimony provided by witnesses pursuant to subpoenas, and this usually involves the court reporter making an audio recording of the testimony to ensure the accuracy of the transcription.  Pursuant to the APA, OSHA plainly possesses the authority to transcribe such testimony, and Respondents have no valid basis for refusing to comply with the subpoenas simply because they would prefer the testimony not be recording and transcribed.

It is also worth noting that OSHA is authorized not only to issues subpoenas requiring witnesses to testify, but to require that such testimony be made "under oath."  29 U.S.C. § 657(b).  Although not as explicit as the APA provisions cited above, this provision implies the expectation that the witness testimony will be transcribed by a court reporter because, outside of a courtroom, it is traditionally court reporters who administer oaths to testifying witnesses.  The Secretary of Labor and the Secretary's representatives have no legal authority to administer oaths to witnesses.

### C.    Respondents cannot satisfy their burden to show that judicial enforcement would amount to an abuse of process.

Because there is no dispute that the *Morton Salt* standard is satisfied here, Respondents have the burden to establish that enforcement of these subpoenas would be improper or an abuse of process.  *See Chao v. Cmty. Tr. Co.*, 474 F.3d at 79; *Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118 at 125.  There is no basis for concluding that having a court reporter transcribe the sworn testimony of these witnesses would be in any way improper or an abuse of process.  In fact, it is arguably in the best interest of all parties, including the witnesses, to ensure that the testimony is accurately transcribed and documented in a transcript.

Transcribing the testimony serves the objective of ensuring that the information OSHA will rely upon when issuing citations is accurate and will not be the subject of dispute at a later date. [2]

> **D.   The Court must disqualify Mr. Pawk from representing Respondents based on evidence clearly establishing that he solicited their representation, that he has a significant conflict of interest, and that he has at all times acted in the best interests of Vorteq and not his clients.**

Mr. Pawk initially represented four employees: the three Respondents in this matter and a fourth individual (the "Informant") whose identity is being withheld pursuant to the Informant Privilege. [3]  The Informant has recently terminated Mr. Pawk's representation and has chosen to waive the attorney-client privilege and share information about Mr. Pawk's conduct while Mr. Pawk was representing the Informant. [4]  *See* Declaration of Informant ("Informant Decl."), attached as Exhibit C, at par. 28, 29.  The Informant has also ended his employment with Vorteq. *See* Informant Decl. at 31.  The Informant has provided detailed information regarding Mr.

---

[2] Transcribing the testimony also benefits this Court.  If any other issues were to arise during the testimony that might require an additional subpoena enforcement action, such as improper privileges asserted by counsel and instructions by counsel not to answer questions, this Court would greatly benefit from being able to review a transcript of precisely what questions were asked and what objections were made.

[3] The version of the declaration being submitted with this petition is redacted pursuant to the informant privilege to protect the identity of the employee declarant.  The informant privilege allows the government to withhold the identity of persons who furnish information about violations of the law to officers charged with law enforcement.  *See Roviaro v. United States*, 353 U.S. 53 (1957).  "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement," which is achieved by encouraging citizens, through preserving their anonymity, to come forward with knowledge of the commission of crimes to law enforcement officials. *Su v. Innovative Design & Dev. LLC*, 2023 WL 7384409, at *2 (D. N.J., 2023) (quoting *Roviaro*, 353 U.S. at 59).  Upon request by the Court, an unredacted version can be provided under seal for an *in camera* review.

[4] The Informant in his declaration expressly states that the attorney-client privilege has been explained to him, that he understands it, that he has chosen of his own free will to waive the privilege with regard to conversations between himself and Mr. Pawk because he wants to share what Mr. Pawk has said to him, and that he has not been pressured in any way to waive the privilege or share this information.  *See* Informant Decl. at par. 28, 29.

Pawk's conduct while representing the Informant that establishes the basis for disqualifying Mr. Pawk from representing the three employees whom he currently still represents.[5]

1.    **Background information regarding the Informant's involvement in this matter.**

The Informant worked as a lab tech for Vorteq from approximately a year and five months until ending his employment on February 13, 2024.  *See* Informant Decl. at par. 3-5.  The employee who was killed at the plant, Joe Reyes, was the Informant's co-worker and friend, and the Informant was being trained by Mr. Reyes in the weeks prior to his death.  *See* Informant Decl. at par. 6.  The Informant was one of the first people to find Mr. Reyes after he was killed on September 5, 2023.  Shortly before Mr. Reyes was killed, the Informant and Mr. Reyes were instructed by Chad Wissinger, the management employee in charge of Quality Control, to clean two coater machines.  Specifically, Chad Wissinger instructed Mr. Reyes to clean the prime coater machine upstairs, and instructed the Informant to clean a different coater machine downstairs, without shutting the machines down.  *See* Informant Decl. at par. 21.  Mr. Reyes went to clean the prime coater while it was running and that is when he was killed.  *Id.*

2.    **Vorteq selected Mr. Pawk and is paying for Mr. Pawk to represent Respondents, Mr. Pawk solicited the representation, and Mr. Pawk has acted in Vorteq's best interest and advised the employees not to disclose information to OSHA that would be harmful to Vorteq.**

Immediately after Mr. Reyes was killed, Vorteq's management began efforts to contain information about how his death occurred.  Ed McKissick, the Plant Manager, told employees they were not allowed to leave until they had spoken with an attorney representing Vorteq who

---

[5] The informant privilege is not waived merely because the identiyy of an informant might be deduced from the circumstances.  *See United States v. Hayes*, 13 F. App'x 708, 711 (9th Cir. 2001).

was coming to the plant.  *See* Informant Decl. at par. 8.  Ed McKissick also told the employees

they were not allowed to make any phone calls until they spoke to Vorteq's attorney.[6]  The

Informant had to wait approximately five or six hours to speak with the Vorteq attorney, which

was after the traumatic experience of finding Joe Reyes, and on top of the time he had already

been working when Mr. Reyes was killed.  *See* Informant Decl. at par. 9.

Then, Vorteq's managers decided to find and pay for an attorney to represent as many

employees as possible, in a continuing effort to contain information about how Mr. Reyes was

killed.  Vorteq's managers selected Mr. Pawk, brought Mr. Pawk to the plant on September 29,

2023, told employees the company was offering an attorney to represent them at no charge, and

instructed employees to meet with him individually.[7]  *See* Informant Decl. at par. 11-13.

Although Mr. Pawk paid lip service to the notion that his "loyalty" would be with the employees

even though he was being paid by Vorteq, *see* Informant Decl. at par. 13, Mr. Pawk immediately

began to take steps to protect Vorteq's interests.  During Mr. Pawk's first meeting with the

Informant, he told the Informant that he did not have to talk to OSHA, and said something to the

effect of, "I'm just going to tell you these guys are not on your side," referring to OSHA.  *See*

Informant Decl. at par. 16.  He also asked questions that could only be intended to determine if

Mr. Reyes could somehow be blamed for his own death, including what Mr. Reyes' demeanor

was like on the day he was killed, and whether anything seemed out of the ordinary with Mr.

---

[6] During that time, the Informant was upset and went outside to call his girlfriend.  Ed McKissick came up to the Informant and told him to get off the phone and told him not to call anyone until he met with the attorney.

[7] As explained below, this is a clear example of "solicitation" prohibited by applicable ethical rules of conduct.

Reyes. *See* Informant Decl. at par. 14. He also presented the Informant with a contract, which the Informant signed. *See* Informant Decl. at par. 15.

Mr. Pawk continued throughout his representation of the Informant to act in the best interests of the company and not the Informant. Mr. Pawk and the Informant met at the plant a total of two or three times. *See* Informant Decl. at par. 17. During one of these meetings Mr. Pawk told the Informant that OSHA wanted to question the Informant and told him he could invoke his Fifth Amendment right against self-incrimination. *See* Informant Decl. at par. 18. He further advised the Informant that if he did not want to plead the fifth, he should say "I don't know" or "I don't remember." *Id.* In an obvious attempt to persuade the Informant to "plead the fifth", Mr. Pawk shared with the Informant that another of the employees he represents, Mr. Simmons (one of the three Respondents), had decided to assert the Fifth Amendment, then added, "Oops, I shouldn't have said that." *See* Informant Decl. at par. 20. And, on multiple occasions, Mr. Pawk repeated things like, "These guys aren't your friends," and "These guys are not there for you," referring to OSHA. *See* Informant Decl. at par. 19.

In a revelatory moment of conflicted interests, Mr. Pawk specifically advised the Informant not to tell OSHA highly relevant information about Mr. Reyes's death which would significantly implicate Vorteq's management. During one of their meetings, the Informant told Mr. Pawk that, immediately before Mr. Reyes was killed, manager Chad Wissinger had instructed Mr. Reyes to clean the prime coater machine without turning it off, and instructed the Informant to clean another coater machine without turning it off. *See* Informant Decl. at par. 19, 20. In response, Mr. Pawk said something to the effect of, "I wouldn't tell them that," referring to OSHA. *See* Informant Decl. at par. 20.

13

Mr. Pawk suggesting that the Informant invoke the Fifth Amendment or pretend that he doesn't know or recall certain things, in these specific circumstances, could not possibly be in the Informant's best interests, and are clearly in the best interests of Vorteq and its managers. This is because there are potential criminal ramifications for Vorteq and its managers in this case, and not for the non-management employees. The OSH Act includes a provision that "[a]ny *employer* who willfully violates . . . any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine or not more than $10,000 or by imprisonment for not more than six months, or by both." 29 U.S.C. § 666(e) (emphasis added). The OSH Act does not include any such criminal provisions for non-management employees, and does not include any provisions whatsoever pursuant to which non-management employees could even be liable for civil penalties. Thus, there could be no benefit to the Informant by invoking the Fifth Amendment or pretending not to know or recall information, while there is a clear benefit to Vorteq and its managers in taking this approach. [8]

In a recent meeting between Mr. Pawk and the Informant, Mr. Pawk continued to try to ensure that the Informant would not disclose information that was harmful to Vorteq. Mr. Pawk again advised the Informant that when he was questioned by OSHA, he should say "I don't know" or "I don't remember." *See* Informant Decl. at par. 24. He also said that when the Informant was being interviewed, if Mr. Pawk thought the Informant was about to say anything that would incriminate anyone, he would "stop the interview." *See Id.*

---

[8] In fact, if Mr. Pawk had been focused on the best interests of Respondents, he would have explained to them that they are merely witnesses, and as witnesses they could be criminally prosecuted for concealing material facts or making materially false statements. *See* 18 U.S.C. § 1001. Thus, Mr. Pawk should have been going out of his way to encourage his clients to share *all* relevant information, including information potentially damaging to Vorteq and its managers.

The *only* people who might be "incriminated" as a result of the information that the Informant has are Vorteq's management employees, especially Mr. Wissinger (who instructed Mr. Reyes to clean the prime coater while it was running). The Informant himself could not possibly be "incriminated" by this information. Thus, when Mr. Pawk told the Informant he would "stop the interview" if the Informant were about to say something that would "incriminate anyone," he was making clear that he would prioritize protecting the management employees of Vorteq, the company that selected him and is paying him. Mr. Pawk's conflict of interest could not be any clearer. An attorney genuinely committed to the best interests of the non-management employees would never advise them to withhold information while testifying under oath to the federal government, since doing so would violate the law. Rather, an attorney without a conflict of interest would advise his clients to be forthcoming and honest, regardless of whether the information they would share might be harmful to Vorteq.

3. **Mr. Pawk's assertion that his clients refused to testify under oath if a court reporter were recording and transcribing the testimony was an obstruction undertaken for Vorteq's benefit conceived of by Mr. Pawk without consulting with the employees he claims to be representing.**

During a recent meeting with Mr. Pawk, Mr. Pawk advised the Informant that the OSHA interviews had been postponed. *See* Informant Decl. at par. 23. Although Mr. Pawk told OSHA that he would not allow his clients to testify if the interviews were recorded and transcribed by a court reporter, he had never before spoken with the Informant about this issue to determine what the Informant himself wanted. *See* Informant Decl. at par. 25. Had he actually discussed this issue with his client the Informant, the Informant would have told him that he had no concerns about an audio recording. *See Id.* Thus, Mr. Pawk's objection to a court reporter making an audio recording and transcribing the interviews was nothing more than Mr. Pawk's own attempt

15

to delay the interviews; in fact, the Informant would not have had any objection to an audio recording of the interview had Mr. Pawk discussed this issue with him. *See Id.* And, of course, any delay of the sworn interviews could only be to the benefit of Vorteq and does not in any way benefit the individuals whom Mr. Pawk claims to be representing.

Two recent incidents firmly establish that Mr. Pawk and Vorteq's management employees are fully aware that OSHA has a relatively narrow window of six months after the occurrence of violations to gather evidence and issue citations. *See* 29 U.S.C. § 658(a). First, Plant Manager Ed McKissick revealed his keen awareness that withholding information and engaging in delay tactics would benefit him and Vorteq in comments he recently made to the Informant. On Monday, February 12, 2024, while working at the plant, Mr. McKissick said to the Informant something to the effect of, "I just want all of this stuff to be over with. If they don't do anything by March 5th, that's six months. All we have to do is not say anything until March 5th, then we're ok." *See* Informant Decl. at par. 30. The Informant understood that Mr. McKissick was referring to OSHA. *Id.*

Second, a different employee, whose identity is also being withheld pursuant to the informant privilege (the "Second Informant"), has shared with OSHA the contents of a conversation that he recently overheard at the plant. During the week of February 12, 2024, the Second Informant was standing at the time clock when a person opened a door to a conference room near to where he was standing. *See* Declaration of Second Informant ("Second Informant Decl."), attached as Exhibit D, at par. 5. When the door opened, the Second Informant could see two people, Quality Control Manager Chad Wissinger and Mike Pawk. *Id.* There was a third person in the room who the Second Informant heard but could not see. *Id.* The Second Informant heard one of the people in the room state that the First Informant had quit the day

16

before. *See* Second Informant Decl. at par. 7. In perhaps the clearest indication of all that Mr. Pawk is acting in Vorteq's interests, and not in the interests of his purported clients, Mr. Pawk responded, "We're f****d." *See* Second Informant Decl. at par. 8. Mr. Pawk obviously recognized the high likelihood that the Informant, having first terminated Mr. Pawk's representation, and having then ended his employment with Vorteq, would do exactly as he has done, which is to come forward and provide OSHA with a full and truthful account of what happened at the plant immediately before Mr. Reyes was killed.

The fact that Mr. Pawk chose to use the word "we" in referring to Vorteq and himself reveals his profound conflict of interest. Mr. Pawk's role in this matter, from the start, has been to protect Vorteq by persuading the non-management employees that they should not trust OSHA, advising them that they should not disclose information to OSHA that would be damaging to Vorteq's management employees, and delaying the sworn interviews of the non-management employees on frivolous grounds.

> **4.   Courts in similar situations have not hesitated to disqualify attorneys who ostensibly represent employees but who, in fact, are acting in the best interests of the employer being investigated by OSHA.**

Mr. Pawk must be disqualified, first because his involvement constitutes "solicitation" that is prohibited by applicable ethical rules of conduct, and second, and more importantly, because of his demonstrated conflict of interest. In similar cases, courts have disqualified attorneys in order to carefully safeguard the rights of employees to speak in private with OSHA and share truthful information, and to ensure OSHA can fulfill its statutory mission to gather accurate information when investigating employers.

First, Mr. Pawk was selected by Vorteq to represent the non-management employees, and his representation is being paid for by Vorteq. *See* Informant Decl. at par. 13-15. Further, he

was presented by Vorteq to the employees as the attorney that Vorteq had already chosen to represent them, offered his representation to the employees, and presented them with a contract to sign.  *See* Informant Decl. at 11, 13.  This is a violation of Pa. R. Prof. Cond. 7.3 which provides:

> A solicitation is a targeted communication initiated by the lawyer that is directed to a specific person and that offers to provide, or can reasonably be understood as offering to provide, legal services. In contrast, a lawyer's communication typically does not constitute a solicitation if it is directed to the general public, such as through a billboard, an Internet banner advertisement, a website or a television commercial, or if it is in response to a request for information or is automatically generated in response to Internet searches.

A similar situation arose in *Rivera v. Lutheran Med. Ctr.*, 866 N.Y.S.2d 520 (Sup. Ct. 2008), *aff'd*, 899 N.Y.S.2d 859 (2010).  In that case, the law firm of Morgan Lewis represented the defendant employer in an action alleging retaliatory and discriminatory discharge under New York City Human Rights Law (NYCHRL) and State Human Rights Law (NYSHRL).  Morgan Lewis contacted certain current and former employees of the defendant who were non-party witnesses and informed them that the defendant employer was offering to have Morgan Lewis represent them on an individual basis at the defendant's expense.  *Id.* at 526.  The Court disqualified Morgan Lewis from representing the current and former employee witnesses because it violated the then-applicable New York ethics rule prohibiting solicitation.  *Id.* at 526-27.  Here, Vorteq selected Mr. Pawk, the employees were required to meet with Mr. Pawk, Mr. Pawk offered his representation and presented the employees with contracts, and Mr. Pawk is being paid by Vorteq.  The conduct clearly violates Pa. R. Prof. Cond. 7.3.

Even more importantly, Mr. Pawk has demonstrated an intractable conflict of interest. Pa. R. Prof. Cond. 1.7 prohibits a lawyer from representing a client if the representation is "materially limited by the lawyer's responsibilities to . . . a third person or by a personal interest

18

of the lawyer" unless, among other requirements, "each affected client gives informed consent").

Under circumstances similar to those here, courts have disqualified attorneys from representing

employees of the employer under investigation by OSHA.

In *Dole v. Bailey et al.*, 1990 WL 299392 (N.D. Tex. 1990), a single attorney claimed to

represent both the employer being inspected and employees providing sworn testimony pursuant

to subpoena. In the Secretary's subpoena enforcement action, the court enforced the subpoena

and precluded the employer's counsel from representing the employees or being present during

the employees' sworn testimony because of an obvious conflict of interest. *Id.* at *3. The Court

held that the attorney had "an obligation to protect the interests of [the employer]" and allowing

the attorney to also represent employees "being interviewed for the express purpose of

uncovering possible OSHA violations by [the employer] would sanction the purest form of

conflict." *Id.*

Although the instant situation ostensibly does not involve the same lawyer representing

both Vorteq and the non-management employees, it involves an actual, demonstrated conflict of

interest, and not just a potential conflict. Mr. Pawk has engaged in multiple actions, and has

made numerous comments, that demonstrate he is not only being paid by Vorteq but acting in the

company's best interests. He has consistently advised his purported clients to plead the fifth or

withhold information from OSHA; he has attempted to persuade his clients that OSHA cannot be

trusted rather than an agency seeking to protect them; he said, "I wouldn't tell them that" in

response to the Informant explaining how Mr. Wissinger instructed Mr. Reyes to clean the

machine while it was running; he has raised a frivolous objection to the sworn interviews in

order to delay the interviews for Vorteq's benefit without even determining whether his clients

agreed with his position; and, after the Informant terminated his representation, and in response

to learning that the Informant stopped working for Vorteq, he said to Mr. McKissick, "We're f****d."

For these reasons, Petitioner asks that this Court, in addition to requiring Respondents to provide testimony under oath with a court reporter recording and transcribing, disqualify Mr. Pawk and his firm Lutz Pawk & Black from continuing to represent Respondents. Petitioner further requests that the Court grant the same corrective relief ordered by the court in *Rivera v. Lutheran Med. Ctr.*, 866 N.Y.S.2d at 527-28, by requiring Mr. Pawk to send letters to each of the three Respondents informing them that Mr. Pawk and his firm can no longer represent them, and by expressly allowing Petitioner to contact the three Respondents directly and interview them without the presence of Mr. Pawk.

## V.   CONCLUSION AND PRAYER FOR RELIEF

As discussed above, OSHA has the statutory authority to subpoena these witnesses to provide testimony under oath, the APA supports the conclusion that OSHA may have a court reporter record and transcribe the testimony, and Respondents have not shown that doing so would be improper or an abuse of process.

WHEREFORE, for the reasons set forth herein, the Secretary respectfully requests and prays that the Court:

A.   Enter an Order requiring Respondents to provide sworn testimony in the presence of a court reporter hired by OSHA who will administer oaths and transcribe the testimony, which may include making an audio recording of the testimony for purposes creating an accurate transcript of the testimony;

B.   Disqualify Mr. Pawk and his firm from representing the three Respondents or any other current or former employees of Vorteq;

20

C.      Order Mr. Pawk to send letters to each of the three Respondents informing them that Mr. Pawk and his firm can no longer represent them;

D.      Include in its Order that Petitioner may contact the three Respondents directly and interview them without the presence of Mr. Pawk; and

E.      Grant such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**SEEMA NANDA**
Solicitor of Labor

**SAMANTHA THOMAS**
Acting Regional Solicitor

*/s/ Judson H. Dean*
**JUDSON H. DEAN**
Senior Trial Attorney
Pro Hac Vice Pending

*/s/ Jenna L. Jankowski*
**JENNA L. JANKOWSKI**
Trial Attorney
Pro Hac Vice Pending

*/s/ Matthew R. Epstein*
**Matthew R. Epstein**
Regional Counsel
PA Bar ID No. 209387

U.S. Department of Labor
Office of the Regional Solicitor
1835 Market Street
Mailstop SOL/22
Philadelphia, PA 19103-2968
epstein.matthew.r@dol.gov
(215) 861-5122 (voice)
(215) 861-5162 (fax)

*Attorneys for Petitioner Julie A. Su, Acting Secretary of Labor, United States Department of Labor*